IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CRISSIE LEE MEDLIN                                                      PLAINTIFF

V.                    CASE NO. 4:18-CV-88-DPM-BD

SOCIAL SECURITY ADMINISTRATION                          DEFENDANT


# RECOMMENDED DISPOSITION

## I.   Procedures for filing Objections:

This Recommended Disposition ("Recommendation") has been sent to Judge D. P. Marshall Jr. Any party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive the right to appeal questions of fact.

## II.  Introduction:

On September 20, 2014, Crissie Lee Medlin applied for disability benefits, alleging an onset date of May 1, 2012. (Tr. at 21) Ms. Medlin's claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Medlin's application. (Tr. at 33) Ms. Medlin requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner.

Ms. Medlin filed this case seeking judicial review of the decision denying her benefits.

### III.  The Commissioner's Decision:

The ALJ found that Ms. Medlin had not engaged in substantial gainful activity since the alleged onset date of May 1, 2012. (Tr. at 23) At step two of the five-step analysis, he found that Ms. Medlin had the following severe impairments: borderline intellectual functioning and anxiety disorder. *Id*.

After finding that Ms. Medlin's impairments did not meet or equal a listed impairment (Tr. at 24), the ALJ determined that Ms. Medlin had the residual functional capacity ("RFC") to perform work at all exertional levels, with some mental limitations. (Tr. at 25) She could perform only unskilled work, where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, involves few variables, and requires little independent judgment. *Id*. The supervision required is simple, direct, and concrete. *Id*. Ms. Medlin could not perform any work requiring that she make change, such as cashier or food server. *Id*.

The ALJ found that Ms. Medlin was capable of performing her past relevant work as a bagger (Tr. at 31), but made an alternate finding at step five. *Id*. Relying on the testimony of a Vocational Expert ("VE"), the ALJ found that, based on Ms. Medlin's age, education, work experience and RFC, she was capable of performing work in the national economy as poultry dresser and housekeeper/cleaner. (Tr. at 33) The ALJ concluded, therefore, that Ms. Medlin was not disabled. *Id*.

## IV. Discussion:

### A. Standard of Review

The Court's role in reviewing an unfavorable decision by the Commissioner is to determine whether the decision is supported by substantial evidence on the record as a whole. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In reviewing the decision, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse, however, just because there was sufficient evidence to support a different decision. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

### B. Ms. Medlin's Arguments on Appeal

Ms. Medlin argues that substantial evidence does not support the ALJ's decision to deny benefits because the ALJ should have found that she met Listing 12.05. Ms. Medlin underwent an intelligence examination in August of 2013, administered by Sam Boyd, Ph.D., psychologist, and Peggy J. Foster, a Licensed Psychological Examiner. (Tr. at 356)

On the WAIS-IV test, her full-scale score was 62, with reasoning score of 69 and verbal comprehension score of 66. (Tr. at 357) Dr. Boyd and Ms. Foster categorized her as mildly mentally retarded. *Id*. Ms. Medlin exhibited a good attitude and was cooperative during the examination. (Tr. at 356) She reported that she had been in special

resource classes throughout school and had been fired from jobs for not getting along with management. *Id*. Ms. Medlin reported she could perform activities of daily living, but that she needed reminders to take medication, could cook only simple meals, could not manage a checkbook or count money, and required help from her boyfriend to buy groceries. (Tr. at 358)

Indeed, at the hearing, Ms. Medlin reiterated trouble with basic activities. She said that the GED test was too hard for her and that she could not understand letters she received from the Social Security Administration. She needed help filling out job applications, and she could not stay on a budget or manage bills. (Tr. at 44-49)

When asked about inpatient hospitalization, Ms. Medlin stated that she did not know what a psychiatric hospital was. (Tr. at 58) She had never lived by herself and had failed the driver's test many times. *Id*. She reported that at two jobs, her boyfriend helped her with basic job tasks. She did not have hobbies or socialize and could cook only simple meals. (Tr. at 441) Ms. Medlin did say she could clean and do laundry. (Tr. at 297-298)

Kenneth Hobby, Ph.D., examined Ms. Medlin on December 9, 2014, well before either of the state-agency psychiatric consultants evaluated the record and issued their opinions. (Tr. at 74, 113, 439-449) Dr. Hobby said that he only had 8 pages of records at his disposal that were pulled from the initial disability application. (Tr. at 439) He diagnosed Ms. Medlin with a learning disorder, but said she could perform most work tasks. (Tr. at 446-449)

4

Ms. Medlin reported to her primary care provider that she had mood swings and trouble with memory and concentration. (Tr. at 361, 384, 561) She was diagnosed with anxiety and major depressive disorder and prescribed Buspar for anxiety, Citalopram for depression, and Trazodone for both conditions. (Tr. at 376-385, 564) But, Ms. Medlin opted not to follow up with specialized psychiatric care.

The record appears to have some inconsistencies that further development of the record would have clarified; but Ms. Medlin argues only that the ALJ erred in his step-three evaluation. She asserts that she met Listing 12.05C.[1]

Listing 12.05B requires that a claimant show: (1) significantly sub-average general intellectual functioning, as evidenced by a full scale IQ score, of 70 or below, or a full-scale IQ score of 71-75, accompanied by a verbal or performance IQ score of 70 or below; (2) significant deficits in adaptive functioning currently manifested by extreme limitations of one or marked limitation of two of the following areas of mental functioning: (a) understand, remember, or apply information; (b) interact with others; (c)

---

[1] The Social Security Administration changed the requirements to meet Listing 12.05 and eliminated Listing 12.05C effective January 17, 2017. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138, 66167 (Sept 26, 2016) (codified at 20 C.F.R. pt. 404, subpt. P, app. 1). The new criteria for Listing 12.05 do not apply, however, to claims pending review in the federal courts and decided by the Social Security Administration before January 17, 2017. *See Id*. at 66138 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."); *see also Curran-Kicksey v. Barnhart*, 315 F.3d 964, 967 (8th Cir. 2003) (applying listing in effect at the time of the ALJ's decision when the Social Security Administration stated in the Federal Register that the new listing did not apply to claims pending judicial review in federal court). Listing 12.05C was not in effect on March 31, 2017, the date of the hearing decision in this case. (Tr. at 33) The Court interprets Ms. Medlin's argument to mean that she met Listing 12.05B, the current Listing most consistent with her condition.

concentrate, persist or maintain pace; or (d) adapt or manage oneself; and (3) evidence demonstrating or supporting the conclusion that the disorder began prior to age 22. 20 C.F.R. Pt. 404 Subpt. P, App. 1 § 12.05B.

Ms. Medlin had a full-scale IQ score of 62, well below the threshold, and the fact that she took special resource classes in school supports her argument that her mental deficiencies began before age 22. Furthermore, the Eighth Circuit has observed that an ALJ may presume that a valid IQ score in range evidences intellectual disability before age 22 because, in most cases, IQ remains fairly consistent throughout one's life. *Muncy v. Apfel* 247 F.3d 728, 734 (8th Cir. 2001). Finally, Ms. Medlin's reports of trouble with daily activities suggest she would likely have marked or extreme limitations in the areas set out in Listing 12.05B.

That said, this Court need not, and cannot, determine whether Ms. Medlin met Listing 12.05B. The ALJ did not discuss any Listing for intellectual disability whatsoever at step three. He addressed only Listing 12.06 (anxiety and obsessive-compulsive disorders) and Listing 12.11 (neurodevelopmental disorders). Furthermore, the ALJ gave little weight to the IQ scores in discussing medical opinions (and did not discuss IQ scores in his step-three discussion). He gave great weight to the opinion of Dr. Hobby, who had only 8 pages of records before him and did not have the benefit of state-agency medical opinions. Even so, Dr. Hobby diagnosed Ms. Medlin with a learning disorder. (Tr. at 446)

In a similar case, the Court of Appeals for the Eighth Circuit found that the ALJ's failure to mention Listing 12.05 was reversible error where the claimant tested in the mild

retardation range, as is the situation with Ms. Medlin. *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005). The court noted that the ALJ's step-three discussion was general and left doubt whether he had considered whether the claimant met Listing 12.05. *Id*. The court remanded for further consideration of the Listings. *Id*. In this case, the ALJ also committed reversible error by failing to discuss Listing 12.05.

## V. **Conclusion:**

The ALJ's decision is not supported by substantial evidence on the record as a whole. The decision should be reversed and the case remanded for further review.

DATED this 18th day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE